COMBINED INVESTIGATIVE SERVICES, INC.,
Plaintiff-Appellant,

v.

SCOTTSDALE INSURANCE COMPANY, American X/S Insurance Company and Diversified Financial Services, Inc., Defendants-Respondents.[1]

Court of Appeals

*No. 91-0688. Submitted on briefs September 4, 1991.—Decided October 23, 1991.*

(Also reported in — N.W.2d —.)

[1]On May 23, 1988, the parties stipulated to the dismissal of Combined's complaint against Diversified. The trial court approved the stipulation by order dated May 25, 1988. The caption on the official docket sheet and the briefs, however, list Diversified along with Scottsdale and American X/S as one of the "Defendants-Respondents." Combined seeks no appellate redress against Diversified. Thus, we emphasize that while our caption conforms to the one provided us, this decision has no practical or legal impact on Diversified.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *John J. Wargo* of *John J. Wargo Law Offices, S.C.* of Racine.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Robert P. Ochowicz* and *Vicki L. Arrowood* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

SNYDER, J.   Combined Investigative Services, Inc. appeals from a summary judgment granted in favor of Scottsdale Insurance Company and American X/S Insurance Company, Scottsdale's Wisconsin agent. We affirm the trial court regarding bad faith and tortious interference with contract. But because we conclude that independent actual notice does not satisfy the notice requirement of sec. 618.41(9), Stats., we reverse on that issue.

The historical facts are straightforward. Combined is a detective agency licensed to do business in Wisconsin. To maintain that license, it must file with the state a certificate of insurance. Section 440.26(3) and (4), Stats.;[2] Wis. Adm. Code sec. RL 33.01. Since 1985, Com-

---

[2]Section 440.26(3) and (4), Stats., provides that a detective agency's license may not be renewed or issued unless it has in force a bond or liability policy furnished by an insurer authorized to do business in this state. Section 618.41(1), Stats., however,

bined obtained its liability insurance through Scottsdale, whose managing general agent in Wisconsin is American X/S. Scottsdale is a "surplus lines" insurer—an unlicensed carrier operating without a certificate of authority to do business in Wisconsin, but nonetheless permitted to do so (generally because there are no licensed carriers in the state offering coverage for a particular type of risk) if certain conditions are met. In exchange for allowing a surplus lines insurer to operate without a license, the state imposes on it a surplus lines tax. *See* sec. 618.41(9), Stats.

The policy in question was to lapse on March 5, 1987. In January 1987, Diversified Financial Services, Inc., Combined's insurance agent, contacted American X/S for a renewal quote. Premiums are determined based on a given year's payroll figures. American X/S quoted Diversified a one-year premium price of $1994.

Combined agreed to the price but failed to make a timely payment, and the policy lapsed on March 5. The next day, however, it sent Diversified a check for $1994 plus fees and surplus lines tax. Diversified received the check on March 9 and cashed it. That same day, American X/S notified Diversified that the wrong payroll figures had been used and that, rather than $1994, the correct renewal premium was $3643. Despite Combined's protestations, American X/S refused to honor the lower quote. It agreed to backdate coverage, however, if Combined tendered the higher amount. Combined reluctantly paid.[3]

---

allows a nondomestic insurer such as Scottsdale which has not obtained a certificate of authority to do business in Wisconsin to negotiate and make insurance contracts if certain conditions are met.

[3]An audit was done a short time later, revealing that a premium even higher than the $3643 was proper. American X/S and

At this point the procedural history grows somewhat lengthy. Combined filed suit against Diversified, American X/S and Scottsdale, alleging breach of contract and bad faith, and seeking both punitive and compensatory damages. American X/S and Scottsdale ("the defendants") moved for partial summary judgment, asserting that the bad faith claim failed to state a cause of action and that punitive damages are not allowed in a contract action. *Autumn Grove Joint Venture v. Rachlin,* 138 Wis. 2d 273, 279, 405 N.W.2d 759, 762 (Ct. App. 1987). Scottsdale also moved to enlarge the time in which to file for summary judgment. The trial court granted the time extension and dismissed the bad faith and punitive damages claims against the defendants. The court also called for additional briefing on tortious interference with contract.

Several days later, Combined moved for reconsideration and filed a brief in support of its claim of tortious interference with contract. On June 3, 1988, the motion was heard, the prior determination affirmed, and the tort claim dismissed.[4] The defendants then successfully moved for summary judgment on the grounds that there was no breach of contract, and even if there was, Combined suffered no damages. Combined moved for reconsideration of the dismissal of both the bad faith and

Scottsdale originally counterclaimed for the difference between the amount actually paid and the amount the audit revealed should have been paid. That counterclaim was dropped prior to this appeal.

[4]Combined appealed the orders dismissing its claims for bad faith, punitive damages and tortious interference with contract. By order dated October 18, 1988, this court dismissed the appeal for lack of jurisdiction because the breach of contract claim was still pending.

breach of contract claims.[5]

At the September 27, 1990 hearing on the motion to reconsider, the summary judgment on Combined's bad faith claim again was affirmed. Also at that hearing, Combined claimed for the first time that all the policies it had purchased through Scottsdale since 1985 were illegal contracts because they were devoid of any stamped or affixed notation containing the notice mandated by sec. 618.41(9), Stats. Combined claimed the policies' illegality entitled it to a full refund of all premiums ever paid. While admitting the notice was not stamped on the policies, American X/S claimed the notice was affixed to them in accordance with its standard practice.

On November 5, a hearing was held on the statutory compliance issue. Based on various affidavits and depositions suggesting that Combined independently had actual notice of the required information, the trial court stated that if that were the case, such notice would satisfy the statutory notice requirements. With that premise, the court then concluded that trial was appropriate on three issues: (1) whether the information required by sec. 618.41(9), Stats., was affixed; (2) if not, whether Combined in fact had independent actual knowledge of the statutory information; and (3) if so, whether it also had actual knowledge that statutory noncompliance could be used as a basis for a total premium refund. Finally, the trial court permitted Combined to amend its pleadings to allege failure to comply with sec. 618.41(9).

On November 14, Combined filed its amended summons and complaint, alleging failure to comply with sec.

---

[5]Before the hearing on this motion, however, Combined filed another notice of appeal of the dismissal of its complaint. By order dated January 9, 1991, this appeal, too, was dismissed for lack of jurisdiction.

618.41(9), Stats., and realleging bad faith and breach of contract. About the same time, the defendants deposed Combined's president, Gary Wait, who testified that, for each of the policy years, Combined was aware of all the statutory information regarding Scottsdale's surplus lines status. The defendants then moved for summary judgment based on Combined's independent actual notice. Combined did not formally oppose the motion, and it was never brought on for hearing.[6] The complaint was dismissed and Combined appealed to this court.

When reviewing a grant of summary judgment, we apply the same methodology as the trial court. *Leverence v. United States Fidelity & Guar.,* 158 Wis. 2d 64, 73, 462 N.W.2d 218, 222 (Ct. App. 1990). We will reverse a trial court's decision granting summary judgment only if the trial court incorrectly decided a legal issue or if material facts were in dispute. *Hammer v. Hammer,* 142 Wis. 2d 257, 263, 418 N.W.2d 23, 25 (Ct. App. 1987).

## I. BAD FAITH

The first issue on appeal is whether the trial court erred in dismissing Combined's bad faith claim against the two defendants. Combined constructs its argument along these lines: knowing that Combined could not operate without a certificate of insurance and that it

[6]A telephone conference was held on September 18, 1991 at this court's request. The only matter discussed was language in the order granting summary judgment stating that such judgment was granted "on the basis of the agreement by the plaintiff . . . that there is no opposition to the motion for summary judgment." The parties clarified that Combined did not oppose the summary judgment because Wait's deposition removed any doubt regarding independent actual notice, and the trial court already had ruled that such actual notice is sufficient under the statute.

would take several months to obtain substitute insurance, the defendants used their superior position "to extort an additional premium" from Combined. Combined concludes that denying a claim *for* the policy is the "functional and legal equivalent" of denying a claim *under* the policy. We disagree.

Wisconsin recognizes only three bad faith insurance actions. They are:

> 1. an insured's action against the insurer for bad faith in settling with a third party claimant where the ultimate judgment exposes the insured to a judgment in excess of the policy coverage;
>
> 2. an insured's action against the insurer for failure to satisfy the insured's nondebatable claim; and
>
> 3. a third party's action against the insurer for failure to reimburse a worker's compensation claim.

*See Kranzush v. Badger State Mut. Casualty Co.,* 103 Wis. 2d 56, 60–62, 307 N.W.2d 256, 259–60 (1981). In each of these situations, the tort of bad faith stems not from a tortious breach of contract, but from a breach of the fiduciary duty the insurer owes its insured resulting from the relationship created by the insurance contract. *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 423, 405 N.W.2d 354, 365 (Ct. App. 1987).

Here the trial court determined that there was no breach of the fiduciary relationship between Combined and the defendants because the parties were merely negotiating the renewal of the policy:

> It's not a question of the insurer failing to perform fiduciary duties imposed by the policy . . . .. The law doesn't say every time there's an insurance policy that anything that happens between the insured and the insurer gives rise to bad faith. It's only those

specific situations which have been recognized in *Kranzush.*

■

We agree. Wisconsin's law regarding bad faith claims against insurers is clearly defined. The fiduciary relationship exists only in connection with performing the insurer's obligations under the policy. This case does not involve an excess judgment, an insured's failure to satisfy an undebatable claim or a claim for worker's compensation. We affirm the trial court's refusal to extend the law into uncharted areas. *See Ford Motor Co.,* 137 Wis. 2d at 425-26, 405 N.W.2d at 365-66.

## II. TORTIOUS INTERFERENCE WITH CONTRACT

■

Next, Combined contends that American X/S tortiously interfered with the contract between Scottsdale and Combined by informing Combined that American X/S had erred in the quote and would cancel the insurance contract unless a higher amount were paid. The trial court rejected this theory, as do we. Tortious interference with contract is conduct which induces or otherwise intentionally causes a third person not to perform a contract. *See Augustine v. Anti-Defamation League,* 75 Wis. 2d 207, 217-22, 249 N.W.2d 547, 552-55 (1977). There is no third person here. Scottsdale, through its agent American X/S, is one party; Combined is the other. No third person was induced or caused not to contractually perform.

■

Moreover, Combined has not established that American X/S acted intentionally, *i.e.,* with a purpose to interfere with the contract. Without such proof, it cannot prevail on this cause of action. *See Cudd v.*

271

*Crownhart,* 122 Wis. 2d 656, 660, 364 N.W.2d 158, 160 (Ct. App. 1985).

## III. STATUTORY NOTICE

Finally, Combined asserts that it is due a full refund of all its premiums since 1985 because the surplus lines policy it had through the defendants did not strictly conform to the requirements of sec. 618.41(9)(a), Stats. That statute provides in part:

> Every new or renewal insurance policy procured and delivered under this section shall bear the name and address of the insurance agent or broker who procured it and . . . *shall have stamped or affixed upon it* the following: "This insurance contract is with an insurer which has not obtained a certificate of authority to transact a regular insurance business in the state of Wisconsin, and is issued and delivered as a surplus line coverage pursuant to s. 618.41 of the Wisconsin Statutes. Section 618.43(1), Wisconsin Statutes, requires payment by the policyholder of 3% tax on gross premium."

*Id.* (emphasis added). Both parties agree that the requisite language was not stamped on the policies. They disagree, however, whether the required notice was affixed. Combined contends it was not, thus rendering the policies illegal contracts, "unenforceable by, but enforceable against" American X/S. *See* sec. 618.44, Stats.

Given this factual dispute, the trial court initially decided that summary judgment was inappropriate. It concluded that independent actual notice of the statutorily mandated information would suffice, but that a jury would have to determine first whether the notice was "affixed," whether Combined in fact had independent

notice, and whether such independent knowledge precluded a claim for full refund. However, after further developments revealed that Combined was aware of the requisite information, summary judgment was granted based on that actual notice.

■■■■

We agree that Combined had independent actual notice of the statutory information. We disagree, however, that such actual notice suffices. Section 618.41(9), Stats., provides that every surplus lines insurance policy "shall have stamped or affixed upon it" certain "*required information.*" (Emphasis in original.) If the statute is merely directory in nature, rather than mandatory, as the trial court's determination suggests, substantial compliance with its terms would be sufficient. *In re F.T.,* 150 Wis. 2d 216, 221, 441 N.W.2d 322, 324 (Ct. App. 1989). Whether a statute is mandatory or directory is a matter of statutory construction and, as such, is a question of law which we review without deference to the trial court. *Id.* Furthermore, if a statute is plain and unambiguous, we must apply its plain meaning. *Boles v. Milwaukee County,* 150 Wis. 2d 801, 813, 443 N.W.2d 679, 683 (Ct. App. 1989).

■■■■

We conclude the statute plainly and unambiguously states what information must be provided and how it must be done. Use of the word "shall" creates a presumption that the statute is mandatory, a presumption strengthened by the legislature's use of the word "may" in related sections, for such use demonstrates that the legislature was aware of different denotations and intended the words to have their precise meanings. *F.T.,* 150 Wis. 2d at 221-22, 441 N.W.2d at 324; *see, e.g.,* sec. 618.41(3), (6), (7) and (11), Stats. Furthermore, if independent notice were enough, the mandate that policies

273

"shall have stamped or affixed" on them certain information would be superfluous. Basic to statutory construction is the idea that every word and clause should be given effect so that none shall be rendered surplusage. *Donaldson v. State,* 93 Wis. 2d 306, 315, 286 N.W.2d 817, 821 (1980).

The trial court stated that independent actual notice accomplishes the same goals as does notice which is stamped or affixed to a policy. While that is true to a degree, substantial rather than strict compliance with the statute does not satisfy the public policy behind stringent regulation of unauthorized insurers. Wisconsin requires that such insurers comply with this state's regulatory scheme as a condition of their selling insurance here. Wisconsin has the right to determine the conditions under which it will permit foreign insurance companies to do business in this state. *Lutheran Mut. Life Ins. Co. v. State,* 242 Wis. 598, 607, 9 N.W.2d 82, 87 (1943).

In addition, sec. 618.44, Stats., plainly provides that a contract "in violation of [ch. 618, Stats.] is unenforceable by, but enforceable against, the insurer." This language, together with the unequivocally mandatory language of sec. 618.41(9), Stats., convinces us that substantial compliance in the form of independent notice cannot suffice. We therefore conclude that the trial court committed an error of law. Accordingly, we reverse the grant of summary judgment on this issue. We remand for trial on all necessary issues, including a determination of whether the required notice was "affixed" to the policy.

No costs to either party.

*By the Court.*—Judgments and orders affirmed in part; reversed in part and cause remanded with directions.