IN RE the MATTER OF the ESTATE OF LeRoy J. FURMANSKI, Deceased:

Dale FURMANSKI, Appellant,

v.

Melissa A. FURMANSKI, Respondent.

Court of Appeals

*No. 94–2394. Submitted on briefs June 6, 1995.—Decided August 2, 1995.*

(Also reported in 538 N.W.2d 566.)

211

On behalf of the appellant, the cause was submitted on the briefs of *James H. Morgan* of Cedarburg.

On behalf of the respondent, the cause was submitted on the brief of *Paul V. Malloy* of *Houseman, Feind, Gallo & Malloy* of Grafton.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J.   Dale Furmanski appeals from a decision and order of the probate court holding that Melissa A. Furmanski is the sole beneficiary of a living trust created by the deceased, LeRoy J. Furmanski. We reverse the court's ruling. We remand for further proceedings.

## FACTS

The relevant facts and history are not in dispute. Melissa A. Furmanski and her father, Dale Furmanski, are the adverse parties to this appeal. LeRoy J. Furmanski, the deceased, was Dale's father and Melissa's grandfather. Dale is incompetent. As a result, LeRoy obtained legal custody of Melissa during his lifetime. Dale is represented in these proceedings by his guardian ad litem.

On January 9, 1987, LeRoy executed a will which created a testamentary trust. The beneficiaries of the trust are Dale and Melissa. LeRoy named Howard A. Fiene and Irene C. Fiene as trustees.

LeRoy's will further provided that the testamentary trust would terminate either upon Melissa reaching twenty-four years of age or her earlier death. If the trust terminated upon Melissa reaching age twenty-four, the trust assets were to be equally divided between Melissa and Dale. Dale's share, however, was to be paid to his conservator or guardian. If the trust

212

terminated upon Melissa's death before age twenty-four, the trust assets were to be distributed to Dale's conservator or trustee.

Later, on September 14, 1990, LeRoy executed a document which he denominated the "Furmanski Trust." In the body of this document he described the trust as a "Revocable Living Trust." This document was apparently drafted without the assistance of a lawyer. LeRoy named himself and Peter J. Dundon as trustees. LeRoy directed the trustees to administer the trust "in such a way as to best support the lifestyle of Melissa A. Furmanski and LeRoy J. Furmanski." We set out the full terms of the trust in the accompanying footnote.[1] The final clause of this document is critical to the appellate issue. It reads as follows:

> Upon the demise of Leroy J. Furmanski, Peter J. Dundon will administer the assets of the

---

[1] The trust document reads as follows:

Be it known to all that on this day that I Leroy J. Furmanski do intend to deliver all of my assets to the "Furmanski Trust" a "Revocable Living Trust."

In pursuit of that end I am hereby appointing myself Leroy J. Furmanski and Peter J. Dundon as Trustees. These trustees are bound by this document to administer the funds in such a way as to best support the lifestyle of Melissa A. Furmanski and Leroy J. Furmanski.

Leroy J. Furmanski shall be in control of all transactions of the "Furmanski Trust." In the event that anything should occur that would prevent Leroy J. Furmanski from active administration of the "Furmanski Trust" Peter J. Dundon will automatically take over the day to day obligations of the trust. Failure to administer shall be determined either by "Power of Attorney" executed by Leroy J. Furmanski, or evidence as to Leroy J. Furmanski's incompetence.

Upon the demise of Leroy J. Furmanski, Peter J. Dundon will administer the assets of the "Furmanski Trust" in accordance with the terms and conditions of the "Will of Le Roy J. Furmanski" dated the Ninth day of January 1987.

"Furmanski Trust" in accordance with the terms and conditions of the "Will of Le Roy J. Furmanski" dated the Ninth day of January 1987.

In the probate court, Melissa and Dale disputed whether this clause: (1) made Melissa the sole surviving beneficiary of the living trust, or (2) introduced Dale as an added beneficiary of the living trust.

The probate court concluded that LeRoy's intent in creating the living trust was "to probably remove the assets that funded the 'living trust' from probate." Thus, the court concluded that LeRoy's intent when using the language in the disputed clause was "to have certain assets distributed outside the Will by means of the somewhat unartful instrument that he created." Therefore, the court determined that "it was the intention of LeRoy J. Furmanski that Melissa A. Furmanski be the sole beneficiary of the living trust created by him." Dale appeals.

## ANALYSIS

We begin with our standard of review. The construction of a testamentary document presents a question of law. *See Holy Family Convent v. DOR*, 157 Wis. 2d 192, 195, 458 N.W.2d 579, 580 (Ct. App. 1990). We review questions of law independently without deference to the decision of the trial court. *Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163, 165 (Ct. App. 1993). Nonetheless, we value the probate court's decision on such a question. *See id.* The principles of construction which are applicable to wills and testamentary trusts are also applicable to *inter vivos* trusts. *Hamilton v. Forster*, 57 Wis. 2d 134, 137-38, 203 N.W.2d 711, 713 (1973).

214

We also observe that in this case the probate court resolved the issue without taking any evidence. Instead, the court answered the issue on the basis of the parties' written briefs which not only contained the parties' legal arguments, but also recited certain undisputed historical information. Thus, this is not a case in which we are obligated to accord "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." Section 805.17(2), STATS. As such, the record on the appellate issue is entirely documentary—a scenario which also presents a question of law. *See Delap v. Institute of Am.*, 31 Wis. 2d 507, 510, 143 N.W.2d 476, 477 (1966).

■

The paramount object of will or trust construction is the ascertainment of the testator's or settlor's intent. *See Madison Gen. Hosp. Medical & Surgical Found. v. Volz*, 79 Wis. 2d 180, 186, 255 N.W.2d 483, 486 (1977). This intent is determined from the language of the document itself, considered in light of the circumstances surrounding the testator or settlor at the time the document was executed. *See id.* The language of the document is the best evidence of the testator's or settlor's intent. *See id.* at 187, 255 N.W.2d at 486. Thus, we first look to that document. *Id.* If there is no ambiguity in the document, there is no need for us to look further as to what may have been the testator's or settlor's actual intent. *See id.*

In this case, the parties do not dispute LeRoy's intent regarding his will and the testamentary trust created therein. It is obvious from this document that LeRoy intended to provide for Melissa and Dale both as beneficiaries of the trust during its existence and as recipients of the trust assets at its termination.

The dispute thus narrows to the meaning and effect of the final clause of LeRoy's living trust. Regardless of the unartful and ambiguous language appearing in other provisions of LeRoy's living trust, we hold that this final clause is clearly and unambiguously stated. This language unequivocally and without limitation directs that upon LeRoy's death the trustee shall administer the living trust "in accordance with the terms and conditions of the 'Will of Le Roy J. Furmanski' dated the Ninth day of January 1987."

We reasonably assume that LeRoy well knew all the terms and conditions of his will when he invoked this language. Those terms and conditions included a testamentary trust naming Melissa and Dale as beneficiaries and as the eventual recipients of the trust assets. It would have been a simple matter for LeRoy to restrict or modify the terms of the testamentary trust in his living will so that Melissa would be the sole beneficiary of the living trust after LeRoy's death. Yet, LeRoy did not employ such language. Instead, he used language which ratified, confirmed and invoked the terms and conditions of his will.

Melissa's argument and the probate court's ruling functionally rewrite LeRoy's will to eliminate Dale as a beneficiary of the testamentary trust. We cannot approve of such a construction in the face of LeRoy's clear and simple directive that upon his death, the living trust was to be administered according to the terms of LeRoy's will. Those terms obviously include Dale. We reverse the decision and order of the probate court. We remand for further proceedings consistent with this decision.

*By the Court.*—Order reversed and cause remanded.