IN the MATTER OF the SEPARATE TRUSTS: John J. McGuire Marital Trust, John J. McGuire Marital Trust No. 2, John J. McGuire Family Trust established under the John J. McGuire Revocable Trust dated July 2, 1984:

Theresa McGuire, Appellant,†

v.

James P. McGuire, J. P. Cullen, Alfred P. Diotte, and Mary McGuire, Respondents.

Court of Appeals

*No. 02–0390. Submitted on briefs November 11, 2002.—Decided February 13, 2003.*

2003 WI App 44

(Also reported in 660 N.W.2d 308.)

† Petition to review denied 7-9-03.

817

On behalf of the appellant, the cause was submitted on the briefs of *Douglas D. Hahn* of *Menn, Teetaert & Beisenstein, Ltd.*, Appleton.

On behalf of the respondents, the cause was submitted on the brief of *Kathy L. Nusslock, Dianne S. Cauble*, and *Daniel J. Borowski* of *Davis & Kuelthau, S.C.*, Milwaukee; and *George K. Steil, Sr.*, of *Brennan, Steil, Basting & MacDougall, S.C.*, Janesville.

Before Dykman, Roggensack and Lundsten, JJ.

¶ 1. DYKMAN, J. Theresa McGuire appeals from an order granting the petition filed by the trustees of two family trusts and denying her motion to have a guardian ad litem appointed for her minor children. She argues that the trial court erred in finding that Article X of the John J. McGuire Revocable Trust is valid under Wisconsin law. She also asserts that it was an erroneous exercise of discretion for the trial court to approve the trust accountings from January 1, 1993, to December 31, 1999, thereby releasing the trustees of any further liability related to those accountings. Because we conclude that Article X is not contrary to Wisconsin law and the trial court properly exercised its discretion when it approved the trust accountings and denied the motion for appointment of a guardian ad litem, we affirm.

## BACKGROUND

¶ 2. On July 12, 1984, John J. McGuire executed a revocable trust (the Trust) for the benefit of himself, his wife, Mary, and their four daughters, Therese, Patricia, Maureen and Megan. At his death in 1987, three new trusts were created by operation of Articles V and VI of the revocable trust: the John J. McGuire Marital Trust, the John J. McGuire Marital Trust No. 2 (the Marital Trusts) and the Family Trust. The current Trustees are James McGuire (John's brother), Mary McGuire, J.P. Cullen, and Alfred P. Diotte.

820

¶ 3. In 2000, the Marital Trusts had assets valued in excess of $7,500,000. Mary receives all the income generated by these assets. In addition, she has access to the principal of the Marital Trusts if the criteria of Article V-B are met:

> If the aforesaid payments of income from this Trust together with Donor's wife's income from all other sources shall not be sufficient, in the discretion of the Trustees, to provide for her reasonable support, care and comfort according to her standard of living during Donor's lifetime, the Trustees may pay to her or apply for her benefit so much of the principal of this Trust as the Trustees may deem proper or necessary for that purpose.

¶ 4. Mary also is entitled to the net income earned by the Family Trust. However, if the total of this and her other income is deemed by the Trustees to be more than sufficient to maintain her standard of living at the level she enjoyed when her husband was alive, Article VI provides:

> [T]he Trustees may either accumulate such excess or distribute such excess in such shares, as they shall deem appropriate, to those of Donor's children who are under the age of twenty-eight (28) years, and whom my Trustees shall determine require funds for their support, maintenance and education (including post-high school education, not to exceed eight (8) years).

> .... In exercising their discretion hereunder, the Trustees shall keep in mind that the Donor's primary purpose in establishing the Family Trust is to provide adequately for his wife during her lifetime, and after her death, to provide adequately for the support, main-

821

tenance and education of any of Donor's children who are under the age of twenty-eight (28) years.[1]

¶ 5. Upon Mary's death, the principal is to be divided equally into four separate trusts, one for each of John and Mary's daughters. The income from these trusts will then be distributed to Therese, Patricia, Maureen and Megan during their lifetimes, or, if these funds are not required for their support, the income will be accumulated in the respective trusts. Ultimately, the principal and income of each trust will go to John and Mary's grandchildren.

¶ 6. When ascertaining whether a beneficiary has a need that warrants making a distribution from the principal of a trust, Article VI directs that:

> [T]he Trustees shall bear in mind that it is not Donor's intention to preserve principal for subsequent generations if the use of the principal for any current income beneficiary seems wise. The Trustees shall also take into account other resources available to the beneficiaries of which they have knowledge. Donor suggests, but does not require, that no distribution of principal shall be made to Donor's wife until the principal of the Martial Deduction Trust and Donor's wife's other assets, excluding any residence owned by Donor's wife, have been exhausted.

¶ 7. In February 2000, as part of her estate planning, Mary's attorney suggested that she transfer assets to her children to minimize the impact of the federal estate tax on her estate.[2] By divesting her assets Mary

---

[1] Under this provision, Megan, John and Mary's youngest daughter, was a permissible income beneficiary of the Family Trust until May 8, 1995, her twenty-eighth birthday.

[2] In the letter sent to Mary's daughters on February 2, 2000, her attorney described the situation succinctly:

would also enable the Trustees to exercise their discretion and distribute principal from the Marital Trusts to her, because she would no longer have sufficient assets of her own to provide for her support. Because these gifts would have to be substantial to realize the desired savings in estate tax, Mary's attorney sent releases to the contingent beneficiaries. The effect of the releases is to relieve the Trustees of any liability to the contingent beneficiaries that might arise from the distribution of trust principal to Mary. Although she is one of the Trustees, under Article VIII of the Trust, Mary is precluded from taking part in any discretionary decision to make distributions from the principal of a trust of which she is a beneficiary.

¶ 8. Therese McGuire, John and Mary's eldest daughter, has been estranged from her mother for several years and refused to sign the release because she was concerned that she might not receive a gift equal to those given to her sisters. Instead, Therese requested additional information from the Trustees regarding the amount and management of the Trust assets, including whether Mary had already made gifts to other family members. She also asked for copies of the accountings the Trustees provided to her mother. The Trustees denied much of Therese's request, but did provide her with an accounting of the Trust administration for the years 1993–99.

---

Those trusts hold assets having a total value for purposes of this letter in excess of $7,500,000.00. Under current tax law, at the time of your mother's death those assets could be subjected to an estate tax assessed at a rate in excess of 50%. As a result, the government stands to be the biggest single beneficiary of your parent's estate.

■■■■■■■■

■■■■■■■■

¶ 9. The Trustees then petitioned the trial court for a finding that Article X of the revocable trust was valid, that the Trustees had fulfilled their obligations under Article X, and that they were released from liability to any beneficiary for the administration of Trust property for the period of January 1, 1993, through December 31, 1999. Further, with respect to future accounts, the Trustees asked to be discharged of any liability to the beneficiaries, present or contingent, if no current or permissive income beneficiary submitted an objection to the accountings within six months of presentation. Therese opposed the petition, arguing that Article X was ambiguous and asking that the court appoint a guardian ad litem to represent the interests of her minor children. She also requested a protective order prohibiting the Trustees from making distributions of the Trust assets until the guardian ad litem had completed an investigation of the administration of the Trust. The trial court granted the Trustees' petition and denied Therese's motions. Therese appeals.

## ANALYSIS

### I. Application of Article X

■■■■

¶ 10. The construction of a testamentary document presents a question of law, which we review de novo. *Furmanski v. Furmanski*, 196 Wis. 2d 210, 214, 538 N.W.2d 566 (Ct. App. 1995). The same principles of construction, which are applicable to wills and testamentary trusts, also apply to *inter vivos* trusts. *Id.* Our obligation is to discern and uphold the settlor's intent. *Weinberger v. Bowen*, 2000 WI App 264, ¶ 12, 240 Wis. 2d 55, 622 N.W.2d 471. We determine the intent from the language of the document itself, considered in light

824

of the circumstances surrounding the settlor at the time the document was executed. If there is no ambiguity in the language of the document, there is no need to look further to determine the testator's actual intent. *Furmanski*, 196 Wis. 2d at 215.

■

¶ 11. Trustees owe a duty to all trust beneficiaries, including contingent beneficiaries. *See Wisconsin Acad. v. First Nat'l Bank of Madison*, 142 Wis. 2d 750, 758–59, 419 N.W.2d 301 (Ct. App. 1987). At issue here is whether the Trust provisions can limit the parties entitled to an accounting. Article X addresses the Trustees' obligations with respect to accountings:

> After the death of Donor, the Trustees shall deliver copies of accounts at regular intervals to the beneficiaries then eligible to receive the income. If all of these beneficiaries execute a written instrument approving a particular account or if any of them fail within six (6) months after delivery of such account to them to object in writing to such account, the account shall stand approved and the Trustees shall be completely released and discharged with respect to the administration of the Trust property for the period covered by such an account, and neither the Trustees nor any successor shall have any responsibility for such account. If any of the beneficiaries be under a legal disability, the guardian or conservator of his estate or either of the parents of a minor beneficiary for whose estate no guardian has been appointed, may act on his behalf in approving such accounts, and delivery of the accounts to such guardian, conservator or parent, followed by the passage of six (6) months without written objections, shall similarly operate to release and discharge the Trustee.

¶ 12. The effect of Article X is to give Mary, the sole current income beneficiary, unilateral authority to approve the Trustees' accountings. Thus, if the Trust-

825

ees make a good-faith determination that Mary should be given a distribution of the Trust principal, and she approves the accounting, the contingent beneficiaries have no right to object to the distribution or to pursue the Trustees for damages. The trial court found Article X unambiguous and valid under Wisconsin law. In doing so it stated:

> Now, it's clear to the Court that John McGuire prepared an extensive and very precise trust document, as part of his estate. It is also clear to the Court that John McGuire was a very able attorney and business-man and was very experienced in these types of affairs.
>
> . . . .
>
> It's also clear to the Court that for that reason [John] decided that he would have family members and friends be the trustees. Now, John McGuire from—in reading the trust documents it's clear that he knew that there was going to be some tensions here, and he resolved those tensions quite clearly in favor of the income beneficiaries, Mary McGuire, and anybody else that was receiving income under the trust.
>
> . . . .
>
> Now, I find that in reviewing this that Article X is clear. It's unambiguous. It is valid. I don't have any evidence or any indication that it's not valid. The only way that I would know that this was not valid would be if John McGuire was not competent to [execute] this document which I have no evidence of that, or if the document was contrary to law in some way, and there is no argument about that.

¶ 13. Wisconsin law is silent as to whether a settlor of an *inter vivos* trust can give one class of beneficiaries sole authority to receive and approve the

826

trust accounting. If this were a testamentary trust, the trustees would be statutorily required to file a verified account annually with the court. WIS. STAT. § 701.16(4) (2001–02).[3] There is no similar requirement in the statutes for the trustees of an *inter vivos* trust. In fact, the legislature has given a settlor of an *inter vivos* trust broad discretion to control the administration of the trust. WIS. STAT. § 701.07(1)(a)4. Further, *inter vivos* trusts are not subject to the continuing jurisdiction of the court, WIS STAT. § 701.01(6), although a court retains "the general equitable power ... to modify or terminate a trust in whole or in part." WIS. STAT. § 701.13(6). However, "[a]s long as trustees act in good faith, from proper motives, and within the bounds of reasonable judgment under the trust's terms and conditions, the court has no right to interfere." *In Matter of Uihlein Trust*, 142 Wis. 2d 277, 286, 417 N.W.2d 908 (Ct. App. 1987) (citing *Filzen v. Headley*, 252 Wis. 322, 326, 31 N.W.2d 520 (1948)).

¶ 14. Therese argues that, as a contingent beneficiary, she has a right to have the Trustees perform their fiduciary duty, which she interprets as providing accountings to the contingent beneficiaries and giving them the opportunity to file objections. At the hearing, Therese expressly denied that she was making any argument that Article X was invalid. She stated to the trial court that "I am not saying that Article X is invalid" and then argued that the provision was ambiguous, because it was not clear regarding the rights of contingent beneficiaries to object to an accounting, or whether the Trustees would be released from liability

---

[3] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

to the contingent beneficiary for accountings approved by the current income beneficiary.

¶ 15. Therese asserts, for the first time on appeal, that Article X contravenes Wisconsin law. We will not consider this argument because it was waived. When she argued against the Trustees' petition, Therese told the trial court that "I am not saying that Article X is invalid." Thus she expressly denied that she was challenging the legal validity of Article X. Instead, she contended that Article X was ambiguous as to the rights of the contingent beneficiaries regarding accountings made by the Trustees to the current income beneficiary. Accordingly, this issue regarding the legal validity of Article X has been raised for the first time on appeal and we decline to address it. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980) (generally, an appellate court will not review an issue raised for the first time on appeal).

¶ 16. The trial court found that the language of Article X is unambiguous. We agree.

¶ 17. Therese does not argue on appeal that Article X is ambiguous. We agree with the trial court that Article X's direction that the Trustees "shall deliver copies of accounts at regular intervals to the beneficiaries then eligible to receive the income" on its face requires only that accounts be provided to the current permissive income beneficiaries. There is no provision in the Trust entitling contingent beneficiaries to accounts.

¶ 18. Therese contends that the intent of the Trust is not only to ensure Mary's care and support, but to preserve as much principal as possible for the con-

828

tingent beneficiaries, John and Mary's grandchildren. If Article X is read to give Mary sole authority to approve the accounts, thereby precluding any action by the contingent beneficiaries against the Trustees with respect to the accounting, the effect of Article X is inconsistent with the basic structure of the Trust, that being to distribute the Trust income to Mary during her lifetime and then to her daughters with the Trust principal ultimately going to the grandchildren. The express language of the Trust, however, refutes this argument. When ascertaining whether a beneficiary has a need that warrants making a distribution from the principal of a trust, Article VI provides as follows:

> [The Trustees] shall bear in mind that *it is not Donor's intention to preserve principal for subsequent generations if the use of the principal for any current income beneficiary seems wise.* The Trustees shall also take into account other resources available to the beneficiaries of which they have knowledge. Donor suggests, but does not require, that no distribution of principal shall be made to Donor's wife until the principal of the Marital Deduction Trust and Donor's wife's other assets, excluding any residence owned by Donor's wife, have been exhausted.

(Emphasis added.)

¶ 19. This is a clear statement of the settlor's intent, which we are bound to uphold. *Weinberger*, 2000 WI App 264 at ¶ 12. Thus, while there is the expectation in the Trust provisions that Mary and her daughters will only receive payments of Trust income while they are primary beneficiaries, and the grandchildren will eventually receive the principal of the Trusts, that outcome is not guaranteed nor is it identified as the prime interest the Trustees are to protect. While Therese might prefer otherwise, the terms of the Trust

clearly demonstrate a preference for the income beneficiaries over the contingent beneficiaries. Accordingly, the application of Article X, giving Mary sole authority to approve or object to the accounts during her lifetime, is not inconsistent with the other Trust provisions.

## II. Approval of 1993–1999 Trust Accountings

¶ 20. Therese also appeals from the trial court's approval of the trust accounts for the period January 1, 1993, to December 31, 1999, and releasing the Trustees of liability for future accounts if no objection is made by the income beneficiary. She argues that the trial court erred when it approved the accounts "based solely on the fact that the income beneficiaries of the Trust approved them." Her argument is premised on her assertion that Article X is invalid because it confers unilateral authority on the income beneficiary to approve the Trustees' actions, thereby depriving the contingent beneficiaries of any right of action against the Trustees, even if the Trustees' administration of the Trust decreases the amount of Trust principal.

¶ 21. We have already determined that by failing to argue this issue in the trial court, Therese has waived her right to contest the legal validity of Article X on appeal. We have further concluded that Article X is unambiguous and consistent with the other Trust provisions. It is undisputed that Megan and Mary, the only permissive income beneficiaries during the years 1993 to 1999, have given written approval of the accountings. Under the terms of Article X, their approval is sufficient to release the Trustees of liability. The Trust does not grant contingent beneficiaries the right to object to the Trustees' accountings. Given these facts, the trial court did not err by approving the accountings.

## III. Guardian Ad Litem

¶ 22. Therese argues that WIS. STAT. § 701.15(2) mandates the appointment of a guardian ad litem to represent the interests of the minor contingent beneficiaries, especially her children. In the alternative, she argues that the trial court erroneously exercised its discretion when it determined that a guardian ad litem was not necessary.

¶ 23. With respect to trust proceedings, the statute at issue, WIS. STAT. § 701.15(2) provides in part:

> [T]he court may appoint a guardian ad litem for any person interested who is legally incapacitated, unascertained or unborn if such person is not already represented by a fiduciary having no adverse interest in the proceeding. A guardian ad litem may represent 2 or more such persons where they have a substantially identical interest in the proceeding. The court may dispense with or terminate the appointment of a guardian ad litem for such person if there is a legally competent person who is a party to the proceeding and has a substantially identical interest in it.

¶ 24. Therese, however, did not argue the application of WIS. STAT. § 701.15(2) to the trial court. Instead, she based her request on fiduciary law and the court's "plenary powers to do justice to protect children." She questioned whether all of the Trustees understood the fiduciary duty that they owed to the contingent beneficiaries, and concluded that appointment of a guardian ad litem for the minor grandchildren was necessary to protect their interests. In denying her request, the trial court stated:

> I further do not appoint a guardian ad litem to investigate the actions of the trustees. I think that would run counter of the Court's interpretation of Article X. I

831

think it would run contrary to John McGuire's expressed intent in this trust both in Article X and otherwise. And I find no authority for the Court to either appoint a guardian nor do I find any need.

¶ 25. The parties agree that the trial court has authority to appoint a guardian ad litem pursuant to WIS. STAT. § 701.15(2). The question is whether the statute makes such an appointment mandatory or discretionary. Whether a statute is mandatory or directory is a question of law, which we review without deference to the trial court. *Combined Investigative Servs., Inc. v. Scottsdale Ins. Co.*, 165 Wis. 2d 262, 273, 477 N.W.2d 82 (Ct. App. 1991). If a statute is plain and unambiguous, we apply its plain meaning. *Id.*

¶ 26. We conclude that under the plain language of WIS. STAT. § 701.15(2), the appointment of a guardian ad litem is discretionary with the trial court. Use of the word "may" creates a presumption that the statute is permissive. *See Swatek v. County of Dane*, 192 Wis. 2d 47, 59, 531 N.W.2d 45 (1995). This general principle can be rebutted if construing "may" as mandatory is necessary to reflect legislative intent. *Schmidt v. Department of Local Affairs and Dev.*, 39 Wis. 2d 46, 53, 158 N.W.2d 306 (1968).

¶ 27. An example of how "may" is properly construed as "shall" is found in *Hitchcock v. Hitchcock*, 78 Wis. 2d 214, 254 N.W.2d 230 (1977). In *Hitchcock*, the trial court denied the parties a divorce based on the doctrine of recrimination. The relevant statute had originally provided that "the court may in its discretion grant a judgment of legal separation," but a subsequent amendment removed the phrase "in its discretion," and the reference to the doctrine of recrimination was

832

deleted. *Id.* at 218–19. Thus the supreme court determined that the statute's legislative history indicated that the intent was to abolish the doctrine of recrimination. The court concluded that if the use of "may" was permissive, the trial court could decline to follow the doctrine of comparative rectitude in favor of the disfavored doctrine of recrimination. Such a result would clearly defeat the legislative intent. *Id.* at 220.

¶ 28. Therese argues that because the phrase "if the court deems it necessary" was deleted from WIS. STAT. § 323.10 (1969), the predecessor to WIS. STAT. § 701.15(2), we should, as was done in *Hitchcock*, construe "may" as mandatory in order to accurately reflect legislative intent. We disagree.

¶ 29. Unlike *Hitchcock*, here there is no indication that the legislature intended to deprive the court of discretion when it enacted WIS. STAT. § 701.15(2). The present statute replaces five statutes addressing the appointment and responsibilities of guardians ad litem in various proceedings.[4] Laws of 1969, ch. 283, § 17. The introductory paragraph of ch. 283 describes the Act's purpose as being to repeal, renumber and amend a number of statutes, and thereby "create chapter 701 of the statutes, relating to revision of the statutes on trusts." Revisions of statutes do not change their meaning unless the intent to change the meaning necessarily and irresistibly follows from the changed language. *Pigeon v. DILHR*, 109 Wis. 2d 519, 526 n.3, 326 N.W.2d 752 (1982). The deletion of "if the court deems it necessary," which was part of the former WIS. STAT. § 323.10 (1969), does not transform "may" from permis-

---

[4] The Comment to ch. 283, § 17 states: "This replaces present ss. 231.35, 323.10 and, as to trust proceedings, ss. 256.52, 260.23 and 324.29(4)."

sive to mandatory. The use of "may" by itself is sufficient to grant the trial court discretion to appoint a guardian ad litem; the removed phrase was surplusage. It does not "necessarily and irresistibly" follow from this deletion that the legislature's intent was to deprive the trial court of discretion. Moreover, if the first sentence of § 701.15(2) is construed as creating an absolute duty on the trial court to appoint a guardian ad litem, the use of "may" in the first sentence becomes inconsistent with its permissive meaning in the remaining sentences.

¶ 30. Accordingly, because we conclude that the decision to appoint a guardian ad litem under WIS. STAT. § 701.15(2) is discretionary, we must now determine if the trial court erroneously exercised this discretion when it denied Therese's request. We will not find an erroneous exercise if there is a reasonable basis for the trial courts determination. *State v. Alsteen*, 108 Wis. 2d 723, 727, 324 N.W.2d 426 (1982). We will sustain discretionary acts by the trial court so long as the court "examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Modica v. Verhulst*, 195 Wis. 2d 633, 650, 536 N.W.2d 466 (Ct. App. 1995).

¶ 31. We conclude that the trial court erred in grounding its decision not to appoint a guardian ad litem on its conclusion that Article X was valid. In denying Therese's request, the trial court stated that it found "no authority for the Court to either appoint a guardian nor do I find any need," because doing so would be contrary to the language and intent of Article X. As noted, the trial court did not mention WIS. STAT.

§ 701.15(2) and the authority it confers to appoint a guardian for the minor contingent beneficiaries. Thus, the trial court made its decision based in part on a mistaken view of the law. Nor did the trial court adequately articulate the reasoning underlying its finding that there was no need for a guardian ad litem in the proceedings. But this does not require reversal. We will search the record for reasons to sustain a discretionary determination made by the trial court. *Filppula-McArthur v. Halloin*, 2000 WI App 79, ¶ 16, 234 Wis. 2d 245, 610 N.W.2d 201, *aff'd* 2001 WI 8, 241 Wis. 2d 110, 622 N.W.2d 436; *State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983) (if the trial court fails to set forth its reasoning in exercising its discretion, appellate court should independently review record to determine whether it supports trial court's decision).

¶ 32. Based upon our independent review of the record, we conclude that it supports the trial court's decision not to appoint a guardian ad litem. Under WIS. STAT. § 701.15(2), one reason for dispensing with representation of a minor by a guardian ad litem in trust proceedings is when there is "a legally competent person who is a party to the proceeding and has a substantially identical interest in it." In Therese's view, the grandchildren, as contingent beneficiaries of the trust principal, have an interest in maintaining the status quo and restricting Mary to receiving only the Trusts' income. Acquiescing to a plan whereby Mary artificially created a financial need so that the Trustees would provide her with funds from the Trust principal would not protect that interest. Nor would the grandchildren's interests be served by endorsing a reading of Article X that relieved the Trustees of liability for distributions made to Mary.

835

¶ 33. These are the same interests asserted by Therese. Her estrangement from her mother and concern that she will not be given as much as her sisters dictate that her interest lies in an application of the Trust provisions that will preserve the most Trust principal. Thus, while the grandchildren have an interest opposed to their parents, who stand to receive substantial sums long before they would be entitled to the Trust income, they share Therese's stated interest in maintaining the Trust principal. Even if her sisters' children share their mothers' interests in supporting Mary's gifting plan, Therese and her children have aligned interests in opposing it. While it may be true that a guardian ad litem might have presented arguments to the trial court that Therese did not, she represented an interest that is substantially identical to that held by the grandchildren, especially her children. In fact, she repeatedly raised concerns at the hearing that the Trustees were not acting in conformance with their duty to the contingent beneficiaries. Moreover, in rendering its decision, the trial court referred to Therese as "attempting to uphold her children's interests." We conclude that the trial court's finding that there was no need for a guardian ad litem reflects the considerations addressed in WIS. STAT. § 701.15(2) and would be a proper exercise of discretion.

*By the Court.*—Order affirmed.

¶ 34. LUNDSTEN, J. *(concurring)*. This case may involve, as appellant Therese McGuire concedes, nothing more than an attempt to legally reduce federal estate taxes upon the death of Mary McGuire. At the same time, Therese argues that the means chosen to avoid taxation is at odds with the intent of the creator of the Trust, her father John McGuire, and that such

836

means may significantly diminish the funds that will eventually pass to Therese's children. My quarrel with the majority is that it mischaracterizes Therese's argument and then knocks down a straw man of its own making. Although I agree with the result and part of the analysis in the majority opinion, I do not join with paragraphs 12 to 14 and 16 to 21. Accordingly, I respectfully concur.

¶ 35. On appeal, Therese argues for the first time that Article X of the Trust, a provision she characterizes as "comparatively minor," is invalid and should be stricken because it conflicts with the key feature of the Trust, the overall distribution plan put in place by John McGuire.[1] The majority decision correctly points out that Therese does not argue ambiguity on appeal and that Therese's assertion that Article X is invalid has been waived. The majority then relies on waiver to reject Therese's Article X invalidity argument. Majority at ¶¶ 15, 17. If the majority stopped there, I would have no need to write separately. However, the majority goes on to refute Therese's Article X argument, but does so by obfuscating Therese's argument. The majority correctly demonstrates that the Trust's primary goal is to provide for Mary McGuire during her lifetime. The majority suggests that Therese argues to the contrary: "While Therese might prefer otherwise, the terms of the Trust clearly demonstrate a preference for the income beneficiaries over the contingent beneficiaries." Majority at ¶ 19. I think the discussion in paragraphs 18 and 19 of the majority opinion purports to address Therese's central argument, but actually sets up a straw man and then knocks it down.

---

[1] To avoid cumbersome language, I will speak as if there is a single trust. In fact, a series of trusts are involved in this case.

¶ 36. In my view, Therese concedes in the briefing on appeal that the first job of the trustees, according to the express terms of the Trust, is to provide for Mary McGuire's "reasonable support, care and comfort according to her standard of living during [John McGuire's] lifetime." Therese has no quarrel with the notion that the trustees may go so far as to completely deplete the Trust, thereby depriving subsequent generations, "if the use of the principal for any current income beneficiary seems wise." Therese admits this, but contends that the trustees sought circuit court approval of a plan that adds nothing to wisely providing for the "current income beneficiary," Mary McGuire. Rather, in Therese's view, the approved plan permits distributions from the Trust that undercut John McGuire's plain desire that funds not needed to maintain Mary McGuire's lifestyle be used in a specified way for the benefit of contingent beneficiaries. Two pertinent trust provisions are as follows:

> If the aforesaid payments of income from this Trust together with Donor's wife's income from all other sources shall not be sufficient, in the discretion of the Trustees, to provide for her reasonable support, care and comfort according to her standard of living during Donor's lifetime, the Trustees may pay to her or apply for her benefit so much of the principal of this Trust as the Trustees may deem proper or necessary for that purpose . . . .
>
> . . . .
>
> . . . [T]he Trustees shall bear in mind that it is not Donor's intention to preserve principal for subsequent generations if the use of the principal for any current income beneficiary seems wise. The Trustees shall also take into account other resources available to the beneficiaries of which they have knowledge. Donor

838

suggests, but does not require, that no distribution of principal shall be made to Donor's wife until the principal of the Marital Deduction Trust and Donor's wife's other assets, excluding any residence owned by Donor's wife, have been exhausted.

Therese's argument (that these and other trust provisions, taken as a whole, evidence John McGuire's intent that trust funds be used to maintain Mary McGuire's lifestyle during her lifetime, but that funds not needed for this purpose be distributed according to remaining trust provisions) is a reasonable construction. Furthermore, Therese's companion argument (that the plain meaning of Article X permits Mary McGuire and the other trustees to thwart this part of John McGuire's intent, because it permits Mary to approve payments to herself that exceed the amounts needed to maintain her lifestyle, thereby enabling Mary to both maintain her lifestyle and distribute funds to people of her choosing, while at the same time immunizing the trustees from all challenges to their decisions) is a serious argument which, had it been preserved, would warrant serious consideration.

¶ 37. Ultimately, however, I believe that holding Therese to waiver is the proper course. I disagree with Therese's characterization of Article X as a "comparatively minor provision" and her assertion that it can simply be deleted. Article X sets forth the accounting obligation of the trustees, a requirement needed, as the respondents point out, because the trusts are living trusts which are not subject to trust accounting requirements under WIS. STAT. § 701.16(4).[2] Furthermore,

_____

[2] I assume without deciding that the trusts at issue are living trusts. That is how they are described by the respondents and Therese does not contest that characterization.

I agree with the circuit court that Article X reflects John McGuire's clear desire to avoid disputes by giving the current income beneficiary authority to approve the actions of the trustees and to also relieve the trustees of liability to contingent beneficiaries. Article X may, on its face, permit actions inconsistent with other trust provisions, but it is hardly a minor provision.

¶ 38. While Therese now makes arguments to support her position that Article X conflicts with other trust provisions that are not easily dismissed, she has failed to propose a viable solution. In her appellate reply brief she contends that we may delete Article X pursuant to authority granted under WIS. STAT. § 701.13(6). That statute provides: "Nothing in this section shall prohibit modification or termination of any trust pursuant to its terms or limit the general equitable power of a court to modify or terminate a trust in whole or in part." However, I do not think it feasible to simply delete Article X. Furthermore, Therese has not suggested how we should modify Article X. Section 701.13(6) does not confer "general equitable power" to modify a trust, but rather explains that such power is not limited by § 701.13. Even assuming we have such power, Therese has not suggested a modification that is either affirmatively authorized by law or that squares with John McGuire's intentions.