COURT OF APPEALS
DECISION
DATED AND FILED

March 20, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP640**

**STATE OF WISCONSIN**

Cir. Ct. No. **2023PR29**

**IN COURT OF APPEALS
DISTRICT IV**

IN THE MATTER OF THE SCOTT F. MINDHAM REVOCABLE TRUST DATED JUNE 3, 2009:

JENNY LOU JOHNSON AND TERRY MINDHAM,

    BENEFICIARIES-APPELLANTS,

  V.

MICHAEL MEWIS,

    TRUSTEE-RESPONDENT.

APPEAL from an order of the circuit court for Iowa County: MATTHEW C. ALLEN, Judge. *Affirmed.*

Before Kloppenburg, P.J., Blanchard, and Taylor, JJ.

¶1     BLANCHARD, J. Jenny Lou Johnson and Terry Mindham (the beneficiaries) appeal a circuit court order denying their petition challenging activities of Michael Mewis when he acted as the trustee for a trust (the Trust)

created by their deceased brother. The beneficiaries filed a petition for an order denying or reducing the fee and the expenses claimed by Mewis as trustee, on the grounds that he failed to: (1) distribute Trust assets within a deadline set by the parties in an agreement reached after the death of settlor Scott; and (2) keep records and disclose to the beneficiaries information about Mewis's work for the Trust. The circuit court denied the petition. We conclude that the beneficiaries fail to show that Mewis breached the terms of the Trust or other legal requirements. The beneficiaries also argue that the court erred in awarding the expenses claimed by Mewis, which consisted of a portion of the fees charged by an attorney retained by Mewis to assist him in Mewis's administration of the Trust. We reject this argument as unsupported in multiple respects. Accordingly, we affirm the circuit court's order.

## BACKGROUND

¶2      The Trust, which named Mewis as the trustee, was created by Scott Mindham as settlor in 2009. It was amended in 2017. References to "the Trust" in this opinion are to the trust instrument as amended. Jenny and Terry, Scott's siblings, are named as remainder beneficiaries in the Trust.[1] As remainder beneficiaries, they are designated in the Trust to receive the Trust assets that remained following Scott's death after accounting for bequests specified in the Trust. Mewis is also named as a beneficiary of the Trust; it designates that he should receive real estate after Scott's death.

---

[1] Because the settlor, Scott, and the beneficiary, Terry, share the same surname, we use the beneficiaries' first names when referring to them individually.

2

¶3    Scott died in May 2022.  The following fall, after Mewis took some steps to administer the Trust, Mewis and the beneficiaries entered into an "Agreement and Compromise" (the Agreement).  The Agreement resolved scrivener's errors in the Trust and clarified how Trust assets were to be distributed. It also identified the particular parcel of real estate that Mewis would receive from the Trust, which resolved an ambiguity in the Trust.  The Agreement also addressed the distribution of those assets that had not yet been distributed as of the date of the Agreement.  Specifically, the Agreement stated that it was "the intent" of Mewis and the beneficiaries that this distribution "shall be" accomplished "within a reasonable period of time not to exceed 30 days" from the date of the Agreement.  There is no dispute that Mewis did not distribute all pertinent assets within the 30-day deadline.

¶4    In May 2023, Mewis shared with the beneficiaries a draft tax return for the Trust that reflected a proposed payment of $55,000 to Mewis from Trust assets for his fee in administering the Trust.  The draft return also proposed that $24,513 be paid out of the Trust to Attorney Robert Jackson, who Mewis retained to assist in the administration of the Trust, to compensate Jackson for his work on behalf of the Trust.  Later that month, the beneficiaries notified Mewis and Jackson that the beneficiaries objected to these proposed payments.  As part of this objection, the beneficiaries requested that Mewis provide them with "itemized accounting[s]" of the "time and service" that Mewis and Jackson each spent on work related to the Trust.  The beneficiaries renewed their request for these accountings in June.

¶5    Jackson directly responded to the beneficiaries in an email, to which Jackson attached "individual billing statements" by his firm to the Trust.  These

3

records reflected what Jackson represented were his work "hours allocated to each entry."

¶6    In this email, Jackson also responded to the beneficiaries' request for similar records from Mewis for the work that Mewis performed for the Trust. Jackson took the position that Mewis's work "parallel[s]" the entries reflected in Jackson's billing statements. Therefore, Jackson told the beneficiaries, the billing statements of the law firm constituted "sufficient disclosure" to support the proposed fees for both Jackson and Mewis. For this reason, Jackson indicated, the beneficiaries would not be receiving an "itemized accounting" of Mewis's "time and service." Further, Jackson defended Mewis's proposed fee. Jackson stated that this represented two percent of the Trust's total value, which Jackson asserted was a rate consistent with local customs regarding trustee compensation. Jackson also stated that, if the beneficiaries continued to object to Mewis's proposed fee after seeing Jackson's explanation, the beneficiaries should petition the circuit court to reduce it.

¶7    The beneficiaries initiated this lawsuit in August 2023. They petitioned the circuit court to deny or reduce the fee and expenses claimed by Mewis, including Jackson's attorney fees, although the petition did not explicitly refer to Jackson's fees. Two evidentiary hearings were held at which the witnesses included the beneficiaries, Mewis, and Jackson. At the hearings, the beneficiaries clarified that they challenged payment of only the attorney fees that Jackson generated following their objection and not the fees that he generated before the objection.

¶8    The circuit court issued a written decision denying the beneficiaries' petition. The court ordered that Mewis' fee of $55,000 be paid from Trust assets.

Although the court did not explicitly address Jackson's proposed attorney fees for work covering any pertinent time period, the court ordered that "the necessary expenses and disbursements … incurred by" Mewis "in defending this [lawsuit] also shall be paid from the [t]rust balance." This was an obvious reference to attorney fees, including those claimed by Jackson. The beneficiaries appeal.

## DISCUSSION

¶9      On appeal, the beneficiaries allege that Mewis's fee and expenses should be denied or reduced because Mewis acted in "breach of trust" under WIS. STAT. § 701.1001(1) (2023-24) in three ways:  (1) by failing to distribute all Trust assets by the 30-day deadline contained in the Agreement; (2) by failing to keep "adequate" records of Mewis's administration of the Trust, as required by WIS. STAT. § 701.0810(1); and (3) by failing, contrary to WIS. STAT. § 701.0813, to promptly respond to their requests for information in order to keep them reasonably informed about the administration of the Trust.[2]  *See* § 701.1001(1) ("A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust.").

¶10     In addition, the beneficiaries contend that the circuit court erred in awarding the expenses claimed by Mewis concerning some of Jackson's attorney fees.  We reject each of the beneficiaries' arguments.

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

## I.    STANDARDS OF REVIEW

¶11     The determination as to whether a historical event occurred presents an issue of fact to be resolved by the circuit court. *Hatleberg v. Norwest Bank Wis.*, 2005 WI 109, ¶¶1, 15, 283 Wis. 2d 234, 700 N.W.2d 15 (addressing a breach of fiduciary duty claim brought against a trustee). "'Findings of fact shall not be set aside [on appeal] unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.'" *Id.*, ¶15 (quoting WIS. STAT. § 805.17(2)). Whether the facts found by the circuit court show that the respondent violated a particular duty presents an issue of law that we review de novo. *Id.*; *Zastrow v. Journal Commc'ns, Inc.*, 2006 WI 72, ¶12, 291 Wis. 2d 426, 718 N.W.2d 51. Similarly, we use a de novo standard to interpret statutes. *See Tammy W.-G. v. Jacob T.*, 2011 WI 30, ¶16, 333 Wis. 2d 273, 797 N.W.2d 854; *see also Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶23 n.12, 291 Wis. 2d 283, 717 N.W.2d 17 (existence and scope of a duty are issues of law).

¶12     We address below the specific standards of review that are applicable to the deadline-provision issue.

## II.    BREACHES OF TRUST

¶13     To clarify, Mewis does not argue that, assuming the beneficiaries proved that Mewis breached the Agreement or failed to comply with a statutory duty, it would not constitute a breach of trust. With that understanding, we conclude that the beneficiaries fail to establish that Mewis breached the Trust in any way that is alleged by the beneficiaries.

6

## A.     Deadline to Distribute Trust Assets

¶14     The beneficiaries argue that Mewis breached the Trust by failing to comply with the deadline provision in the Agreement.  To repeat, the deadline provision stated that it was the parties' intent that the distribution of assets that remained in the Trust as of the time of the Agreement would occur "within a reasonable period of time not to exceed 30 days" after the effective date of the agreement.  We first explain why we conclude that the beneficiaries fail to show that Mewis breached the Trust based on the deadline provision, and then we explain why we conclude that they fail to show that the circuit court improperly exercised its discretion in determining that Mewis did not unreasonably delay in distributing Trust assets, regardless of the deadline provision.

*The Deadline Provision*

¶15     Because the record reflects that Mewis and the beneficiaries entered into the Agreement before the beneficiaries sought circuit court intervention, the Agreement appears to have been a "nonjudicial settlement agreement" under Wisconsin statutes governing trusts.  *See* WIS. STAT. § 701.0111(1), (3)-(4) (an "interested person may enter into a binding nonjudicial settlement agreement with respect to any matter involving a trust" provided the agreement "could be properly approved" or ordered by a court under "applicable law").[3]  This has potential

---

[3] "Interested person" is defined as "a person whose consent would be required in order to achieve a binding settlement were the settlement to be approved by the court."  WIS. STAT. § 701.0111(1).  There is no dispute here that Mewis and the beneficiaries are interested persons in this context.  Further, agreements of this kind may address topics that include, as pertinent here, the "interpretation or construction of the terms of the trust"; "[d]irection to a trustee to perform … a particular act"; or the "resolution of disputes arising out of the administration or distribution of the trust."  *See* § 701.0111(5)(a), (c), (i).  The parties do not contest the Agreement's validity, and following the parties, we treat the Agreement as valid and generally binding.

significance because, under § 701.0111(3), "[a] binding nonjudicial settlement agreement is considered part of the trust instrument." In other words, by operation of statute, such a settlement agreement is to be interpreted as being part and parcel of the corresponding trust, and not as a standalone contract. One result would be that such an agreement must be construed through the lens of a settlor's intentions in creating the trust. *See **Hamilton v. Forster***, 57 Wis. 2d 134, 138, 203 N.W.2d 711 (1973) (courts interpret trust documents through the settlor's "'use of the words in relation to the surrounding circumstances'" of the formation of the trust (quoted source omitted)).

¶16 But here, nothing would be gained by attempting to interpret the Agreement (including its deadline provision) as if it were incorporated into the Trust and viewed through the lens of Scott's intentions. This is true for two reasons. First, Scott had died by the time Mewis and the beneficiaries entered into the Agreement. Second, neither side argues that the Agreement—or at least the specific deadline provision at issue here—was intended to memorialize an intent that Scott expressed while alive. *See **McGuire v. McGuire***, 2003 WI App 44, ¶10, 260 Wis. 2d 815, 660 N.W.2d 308 ("[w]e determine the [settlor's] intent from the language of the document itself, considered in light of the circumstances surrounding the settlor at the time the document was executed"). As a result, it is not possible to determine Scott's subjective intentions to assist in the interpretation of the deadline provision.

¶17 Further, neither Mewis nor the beneficiaries identify a provision of the Trust that bears on the interpretation of the deadline provision. This leaves the terms of the Agreement itself as the only evidence of the mutual intent of Mewis and the beneficiaries regarding the deadline provision. The parties do not identify another provision of the Agreement that aids the interpretation of the deadline

provision.  *See **Pheasant W., LLC v. University of Wis. Med. Found., Inc.***, 2023 WI App 55, ¶27, 409 Wis. 2d 539, 998 N.W.2d 600 (contract interpretation calls for interpreting a contract not based on isolated terms but as a whole).  Thus, we are left to interpret the deadline provision, on its face, without interpretative clues provided elsewhere in the Agreement or provided in the Trust.  Our review of the deadline provision is de novo.  *See **Tufail v. Midwest Hosp., LLC***, 2013 WI 62, ¶22, 348 Wis. 2d 631, 833 N.W.2d 586 (interpretation of contracts presents issues of law); ***McGuire***, 260 Wis. 2d 815, ¶10 (interpretation of testamentary documents, including testamentary trusts, present issues of law).

¶18     With these points in mind, we conclude that the deadline provision of the Agreement is ambiguous on the topic of whether Mewis was strictly required to comply with the 30-day distribution deadline.  Put differently, we conclude that he did not necessarily violate the Agreement simply because all remaining assets were not distributed within 30 days.  We now address the basis for our conclusion that the provision is ambiguous.

¶19     On one hand, the deadline provision states that Mewis "shall" distribute remaining Trust assets before the deadline.  In itself, this could support the beneficiaries' position to the extent that "shall" can sometimes signal the concept of a mandatory duty for which there must be consequences if it is not met.  Further, the provision could be construed as defining as *reasonable* all distributions that occurred before the deadline and defining as *not reasonable* all distributions after the deadline.  This suggests an intent to specify what counts as a "reasonable time to distribute" Trust assets once an event occurs that requires Trust termination, which indisputably occurred here with the death of settlor Scott. *See* WIS. STAT. § 701.0817(2); *see also* WIS. STAT. § 701.0105 (terms of a trust govern over contrary provisions of the trust code, subject to exceptions not

relevant here).[4] Trustee conduct that is expressly defined to be unreasonable might raise the prospect of negative consequences for the trustee by violating the statutory duty contained in § 701.0817(2) or, more generally, the duty to administer the Trust in the beneficiaries' best interests under WIS. STAT. § 701.0801.

¶20 On the other hand, the deadline provision states that it is "the intent of" the Agreement that all distributions of Trust assets be accomplished within 30 days, which could be reasonably interpreted as the parties merely expressing an intended goal—an outcome hoped for, but not guaranteed. Further, the beneficiaries do not identify an aspect of the deadline provision or other terms in the Agreement that specify, or even suggest, what a consequence would be for Mewis's failure to meet the deadline. For example, it would have been simple to include in the Agreement a reduction in compensation if distribution was delayed in general or by designated periods, but nothing like this was stated.

¶21 Given these competing reasonable interpretations, the Agreement is ambiguous on this topic of whether the deadline provision established a mandatory or aspirational term of the Agreement. This raises the issue of whether the deadline provision was mandatory, that is, did the parties intend time to be "of the essence" for the deadline provision? *See Employers Ins. of Wausau v. Jackson*, 190 Wis. 2d 597, 616-17, 527 N.W.2d 681 (1995); *see also Droppers v. Hand*,

---

[4] There is no dispute here that Scott's death was an event that triggered the winding down of the Trust, per WIS. STAT. § 701.0817(2), given the terms of the Trust. The Trust explicitly directed Mewis to distribute identified Trust property to specified recipients, and then to distribute the entirety of remainder to the remainder beneficiaries, leaving no assets in the Trust. Thus, even ignoring the deadline provision in the Agreement, Scott's death imposed a duty on Mewis to "accomplish[]" required distributions "as soon as it [was] reasonably possible to do." *See Sensenbrenner v. Sensenbrenner*, 76 Wis. 2d 625, 634, 252 N.W.2d 47 (1977).

208 Wis. 681, 242 N.W. 483 (1932) (when time is not "of the essence" in a contract provision, failure of a party to meet a deadline to perform does not give other party remedies such as rescission).  As we now describe, the circuit court appropriately addressed this question consistent with pertinent case law regarding whether "time is of the essence."

¶22     In its written decision, the circuit court provided the following summaries of testimony by the parties regarding what they intended to accomplish by including the deadline provision in the Agreement, and neither side now questions the court's summaries.  Jenny testified that she "wanted to resolve the Trust issues quickly."  To that end, Jenny entered into the Agreement in order to obtain a "strict 30-day timeframe for asset distribution" and, in exchange, she gave up her right to object to aspects of the real estate distribution.[5]  In contrast, Mewis testified that he understood that the deadline was merely "a goal, subject to circumstances that could prevent distribution within that timeframe."

¶23     Evoking legal principles regarding whether time is of the essence, the circuit court drew a distinction between what the court called "a mandate," which required enforcement, and an "intention," which merely stated a goal.  The court decided that the deadline provision of the Agreement was not a mandate, but instead a "stated goal," a "non-binding statement of the parties' intent."  The court rested this decision in part on the fact that the Agreement did not specify any form of penalty for Mewis in the event that he failed to complete the distributions within the 30 days.  More generally, the court determined that, considering the

---

[5] Terry's testimony added little.  He testified that he had no memory of the Agreement and more generally no memory that Mewis was trustee of the Trust.

scope and complexity of the Trust as well as the progress that Mewis still needed to make as of the time the Agreement was struck, it would have been "unreasonable" for the parties to expect that Mewis would be able "to completely wind down a nearly $3 million dollar estate within" the 30 days.

¶24    We conclude that it was appropriate for the circuit court here to apply case law regarding whether time was of the essence regarding the deadline provision.  Although the time-is-of-the-essence rule is found in contract case law specifically, the beneficiaries are presumed under both contract law and trust law to have been aware of the time-is-of-the-essence rule in entering into the Agreement.  *See Hamilton*, 57 Wis. 2d at 139 (case and statutes in effect at trust's creation may be consulted as an "'extrinsic aid'" in interpreting ambiguous trust terms, because the settlor is presumed to know the law when creating trust (quoted source omitted)); *Krause v. Massachusetts Bay Ins. Co.*, 161 Wis. 2d 711, 718, 468 N.W.2d 755 (Ct. App. 1991) (contract parties presumed to know law in effect at contract's formation); *Brenner v. Amerisure Mut. Ins. Co.*, 2017 WI 38, ¶39, 374 Wis. 2d 578, 893 N.W.2d 193 ("Contracts … incorporate the law extant at the time of execution.").  Further, whether time was made of the essence in the deadline provision is precisely the ambiguity that needs resolving here.  Beyond that, neither party argues that it was error for the circuit court to interpret the deadline provision to be consistent with the time-is-of-the-essence rule.

¶25    Moreover, the circuit court's application of the time-is-of-the-essence rule was sound under pertinent case law.  "Time is not of the essence of a contract unless it is clear that the parties intended to make it so." *Appleton State Bank v. Lee*, 33 Wis. 2d 690, 693, 148 N.W.2d 1 (1967).  The parties can make time of the essence through the express terms of the contract or, in the absence of such terms, through their conduct. *Rottman v. Endejan*, 6 Wis. 2d 221, 225-26,

94 N.W.2d 596 (1959); *Employers Ins.*, 190 Wis. 2d at 617. When there is no clear expression and the parties dispute whether time was made of the essence through conduct, the circuit court treats the issue as one of fact, taking into account "'the surrounding facts and circumstances, the situation of the parties, and the acts of the parties with respect to the subject matter.'" *Employers Ins.*, 190 Wis. 2d at 616-17.

¶26 Applying these standards here, beginning with the terms of the Agreement, the time provision does not expressly establish that time is of the essence for the reasons noted above: the deadline provision does not expressly state a consequence for failure to meet the 30-day deadline, and the provision is framed in terms of mere intent.

¶27 Turning to the parties' conduct with respect to the deadline provision, the circuit court implicitly gave more weight to Mewis's testimony regarding his understanding of what the provision meant than to the testimony of one of the beneficiaries. In support of this implied finding, the court specifically found that Mewis not only substantially complied with the deadline provision, he acted reasonably in the time he took to distribute Trust assets beyond the deadline. The beneficiaries do not satisfy the burden of establishing that some part of the court's analysis involved clear error. *Id.* at 616.

¶28 The beneficiaries may also mean to suggest the following argument about their purported intentions in entering into the Agreement. They contend that they effectively gave up a potentially valuable position that they could have taken regarding the land bequest to Mewis in the Trust. The idea would be that, without the Agreement, this bequest was disputable because pages of the Trust were missing. The beneficiaries argue that they gave up challenging the unspecified

bequest to Mewis as too indefinite. If intended, this argument fails for a number of reasons, including that the beneficiaries do not offer a legally supported argument explaining how the alleged personal benefit that Mewis gained through the Agreement should affect a proper interpretation of the deadline provision.[6] At most, the beneficiaries identify evidence of the parties' conduct and surrounding circumstances that the circuit court could consider in determining whether the deadline provision was made of the essence in the Agreement, despite the lack of express terms. And, as noted, the court did consider Jenny's testimony regarding her subjective motivations for entering the Agreement.

¶29    In sum on this topic, we agree with the circuit court that the deadline provision is not mandatory. We discern nothing in the Agreement, and the beneficiaries do not call our attention to anything in the record, that required the court to find that time was of the essence for the deadline provision and that it was therefore a mandatory deadline. Further, the beneficiaries implicitly concede the point by failing in their reply brief on appeal to respond to Mewis's arguments, which are consistent with the case law addressing whether time is of the essence. *See* **United Co-op. v. Frontier FS Co-op.**, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578.

*Alleged Unreasonable Delay in Distributing Trust Assets*

¶30    Having concluded that the deadline provision in the Agreement is not mandatory, we turn to the beneficiaries' argument that Mewis unreasonably

---

[6] The beneficiaries also briefly assert that Mewis breached his duty of loyalty to the beneficiaries by retaining real property distributed to him under the Trust, as clarified by the Agreement. This assertion is not developed as part of a legal argument and we reject it on that ground.

delayed in distributing Trust assets, putting the Agreement terms to the side. In general, trustees owe a duty to manage a trust with "due care and diligence," which "includes the requirement that the trustee perform his [or her] designated duties within a reasonable time after they arise." *See Sensenbrenner v. Sensenbrenner*, 76 Wis. 2d 625, 635-36, 252 N.W.2d 47 (1977); *see also* WIS. STAT. § 701.0804 ("A trustee shall administer the trust as a prudent person would" and "shall exercise reasonable care, skill, and caution."). Not surprisingly, given the nature of trusts, this duty extends to "the management of the trust estate," defined to include "the distribution of the trust assets." *See Sensenbrenner*, 76 Wis. 2d at 635-36; § 701.0804 (trustee shall "consider[] the … distributional requirements … of the trust"). Specifically, "'[w]hen the time for the termination of the trust has arrived it is the duty of the trustee to proceed with expedition to wind up the trust and distribute the estate.'" *See Sensenbrenner*, 76 Wis. 2d at 634 (quoting RESTATEMENT (2ND) OF TRUSTS § 345 (AM. L. INST. 1959)). Stated in statutory terms:

> Upon the occurrence of an event terminating or partially terminating a trust, the trustee shall proceed within a reasonable time to distribute the trust property to the persons entitled to it, subject to the right of the trustee to retain a reasonable reserve for the payment of debts, expenses, and taxes.

WIS. STAT. § 701.0817(2); *see also* WIS. STAT. § 701.0816(26) (trustee has power to, "[o]n termination of the trust, exercise the powers appropriate to wind up the administration of the trust and distribute the trust property to the persons entitled to it").

¶31 When an unreasonable-delay challenge is raised, the circuit court determines "'[w]hether the trustee has been guilty of an improper delay in winding up the trust'" based "'upon all the circumstances.'" *See Sensenbrenner*, 76

15

Wis. 2d at 637 (quoted source omitted). Naturally, the larger and more complex the trust, the longer it will tend to take a trustee to reasonably wind up the process. *See id.* This court will not disturb a circuit court's finding that a trustee did not unreasonably delay in distributing trust assets unless the finding is "contrary to the great weight and clear preponderance of the evidence or unless based upon an error of law." *See id.* at 633-34.

¶32    Here, the circuit court implicitly addressed the issue of whether Mewis was reasonably prompt in winding up asset distribution, putting to the side the deadline provision. The court found that Mewis "was able to distribute approximately 84% of this sizeable estate" before the 30-day deadline. Regarding the distributions that occurred after the 30-day deadline, the court found that the facts and circumstances both explain and reasonably justify the delay. The court credited as reasonable Mewis's testimony explaining that it took eight months to fully wind down the Trust because the assets distributed after the deadline involved complications of various kinds. This included some Trust revenue derived from the rental of a solar farm, from IRA funds, and from two pieces of Arkansas real estate.[7]

¶33    We conclude that the beneficiaries do not establish that the circuit court's determination that Mewis did not unreasonably delay distribution of assets

---

[7] One possible loose end was resolved by the circuit court. The court found that Mewis failed to offer an explanation or excuse regarding the time it took for him to distribute one particular asset—the assignment of the leases of the solar farm to two beneficiaries not a party to this appeal. (The solar farm itself was distributed within the 30-day deadline.) But the court determined that this delay was not unreasonable. The court noted that the transfer of the solar farm leases "occurred within months of the execution of the Agreement" and made a determination that "there is no indication" "that the delay was willful or in bad faith or that it resulted in damages to the Trust …."

was against the great weight and clear preponderance of the evidence. *See id.* at 634. As reflected in the background section above, the court explicitly considered the overall circumstances of the Trust and the particular assets that Mewis distributed over time.

¶34     For the first time in their reply brief on appeal, the beneficiaries cite limited evidence that they assert establishes that it should not have been difficult for Mewis to more quickly distribute the remaining assets. The beneficiaries' tardy and selective use of the record is unavailing. They entirely fail to account for the circuit court's reasoning regarding the delayed distribution of assets. Further, the beneficiaries do not offer a developed argument challenging these findings.

¶35     The beneficiaries also assert in their reply brief on appeal that the circuit court erred in taking into account what the court deemed to be an absence of proof that the beneficiaries suffered damage. The beneficiaries contend that they were not required to prove that they or the Trust were damaged in order to sustain their deadline-provision claim. As support for this position, they refer to the fact that their breach of trust claims are statutory, rooted in WIS. STAT. ch. 701. We reject this argument on the ground that the beneficiaries fail to support this argument with legal authority. Notably, the beneficiaries fail to account for the fact that the trust code explicitly directs that the common law of trusts supplements the statutes. *See* WIS. STAT. § 701.0106. This is a significant omission for at least the reason that case law states that "the sanction" for a trustee "not performing" a required duty "within a reasonable amount of time" is that the trustee must pay "a surcharge for any loss thereby caused to the trust assets." *See Sensenbrenner*, 76 Wis. 2d at 636. To prevail on this point, the beneficiaries would at a minimum need to direct us to authority for the proposition that it was

improper for the circuit court to rely in part on the absence of evidence that delays by Mewis caused identifiable harms to the Trust.

## B. Alleged Breach of Duties to Keep Records and Inform Beneficiaries

¶36  The beneficiaries allege that Mewis violated his duties to maintain adequate records regarding administration of the Trust as required under WIS. STAT. § 701.0810(1) ("A trustee shall keep adequate records of the administration of the trust.") and to keep the beneficiaries reasonably informed under WIS. STAT. § 701.0813(1).  As to both duties, the beneficiaries specifically contend that Mewis was required to keep and disclose an "itemized accounting" of his "time and service" working on trust-related matters.  We will refer to what the beneficiaries requested as "hourly billing records" of Mewis's work.  The beneficiaries contend that all trustees must maintain hourly billing records because that is, in their words, "essential in trust administration to determine or to justify trustee compensation and expense reimbursement."[8]

*Duty to Keep Records*

¶37  We begin with the interpretation and application of a trustee's recordkeeping duties under WIS. STAT. § 701.0810(1), which to repeat, states that a "trustee shall keep adequate records of the administration of the trust."  The trust

---

[8] The beneficiaries may mean to suggest that Mewis's proposed fee was not reasonable in light of the amount of work that Mewis actually performed—or, more precisely, in light of the amount of work which Mewis was able to prove that he had performed through reference to Attorney Jackson's hourly billing records and Mewis's factual claims about his work.  But we reject any such argument based on a lack of development.  As we explain in the text, the beneficiaries' arguments about hourly billing records are framed entirely in terms of WIS. STAT. § 701.0810(1) and WIS. STAT. § 701.0813(1), and we do not understand the beneficiaries to directly challenge the circuit court's ruling that Mewis's proposed two-percent fee was reasonable.

code does not define the "administration" of a trust, which might otherwise assist us in interpreting the scope of a trustee's duty to keep "adequate records of the administration of the trust" under § 701.0810(1). *See* WIS. STAT. § 701.0103 (Definitions); *see also State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 ("Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." (quoted source omitted)).

¶38 Although WIS. STAT. § 701.0810(1) does not define what constitutes keeping adequate records of the administration of a trust, the trust code does contain numerous references to trust administration that, as closely related statutes, provide insight into the meaning of § 701.0810(1). *See State v. Reyes Fuerte*, 2017 WI 104, ¶¶26-27, 378 Wis. 2d 504, 904 N.W.2d 773 (closely related statutes are part of the context of statutory text informing its plain meaning; "[s]tatutes are closely related when they are in the same chapter, reference one another, or use similar terms"). Most significantly, under WIS. STAT. § 701.0801 ("duty to administer trust"), a trustee "shall administer the trust … in accordance with [the trust's] terms and purposes[,] the interests of the beneficiaries, and in accordance with this chapter." *See also Zastrow*, 291 Wis. 2d 426, ¶¶33-34 (duties of trustee include obligation to comply with terms of the trust and duty of loyalty to trust beneficiaries). Thus, while the nature of specific tasks involved in trust administration may vary considerably from trust to trust, § 701.0801 establishes that all trustees must administer trusts in a manner consistent with these three requirements.

¶39 Interpreting the duty to keep records under WIS. STAT. § 701.0810(1) in this light, we conclude that "administration of the trust" as used

in the recordkeeping statute must be construed in a way that takes into account the duties established in WIS. STAT. § 701.0801 about what proper trust administration entails. Thus, § 701.0810(1) includes requiring the trustee to keep records that are "adequate" to the requirements that the trustee (1) comply with the terms and purposes of the trust, (2) protect the interests of the beneficiaries, and (3) comply with the requirements of the trust code.[9]

¶40    Based on this general understanding of WIS. STAT. § 701.0810(1), we conclude that Mewis did not violate a duty to keep records about the administration of the Trust. Given the relevant text in the Trust and the relevant facts found by the circuit court, Mewis's duty to maintain adequate records did not include compiling and retaining hourly billing records of his own work before or after the demand by the beneficiaries.

¶41    Beginning with the terms of the Trust, "[t]he trustee shall be entitled to such reasonable compensation as from time to time may be agreed upon in

---

[9] We note that our interpretation of the trustee recordkeeping duty in WIS. STAT. § 701.0810(1) does not follow the narrower approach that Mewis advocates. Mewis emphasizes case law that addresses one type of record that trustees must keep—namely, "'clear, distinct, and accurate records of all the transactions of a trustee'" in order to make "an accurate accounting"— and he suggests that this requires a trustee to keep records only of trust finances. *See Hallin v. Hallin*, 228 Wis. 2d 250, 256, 596 N.W.2d 818 (Ct. App. 1999) (quoting *Barry v. Richards I*, 21 Wis. 2d 334, 341-42, 124 N.W.2d 297 (1963)). Under this case law, the trustee must keep sufficient records to render a "final account" that "'show[s] in detail the items expended and show when, to whom, and for what purposes the payments were made so the beneficiaries can make a reasonable test of the accuracy of the accounts.'" *Id.* (quoting *Barry I*, 21 Wis. 2d at 341-42); *see also* WIS. STAT. § 701.0813(3)(a) (requiring trustee to report certain information on trust liabilities and assets, and to list trust property). If this were the test, then Mewis would prevail here easily because the beneficiaries do not challenge the accuracy, or the level of detail, of Mewis's accounting of the Trust's finances. However, in addition to the reasons we explain in the text for our interpretation of § 701.0810(1), we do not think that case law such as *Hallin*, which involves a trustee's duty to make an accurate accounting, purports to address the complete scope of a trustee's potential recordkeeping duties.

advance and in writing … [by] the majority of the then living adult beneficiaries" of the Trust. However, neither party presented evidence that there is such an agreement here. This means, according to the terms of the Trust, that Mewis was to be paid "reasonable compensation" in "accordance with reasonable and customary fees." Neither party argues that any other Trust provision informs the scope of Mewis's duty to maintain records or to report to the beneficiaries in a way that varies from the statutory defaults established by the trust code. *See* WIS. STAT. § 701.0105(2).

¶42 Pertinent to the Trust's terms regarding trustee compensation, the circuit court made the following findings, which credited testimony by Mewis and Jackson. It was not Mewis's practice as a trustee to record his work time "on an hourly basis." Instead, Mewis "customarily billed for his services at 2% of the value of the estate." The court noted that the Wisconsin statutes do not establish a rate for compensating trustees. The court observed that Mewis's proposed fee was "in line with the 2% statutory fee for personal representatives" who administer probate estates under WIS. STAT. § 857.05(2). This was significant to the court because the court credited testimony by Jackson that "the duties of a personal representative are nearly identical to those of a trustee." "Attorney Jackson further testified based on his rather extensive experience that a 2% fee is the usual and customary charge for trustee services in this locale." The court found that there was no testimony at trial rebutting Jackson on the point that a two-percent fee is the customary compensation for trustees in or around Iowa County.

¶43 Given the circuit court's findings, Mewis's method of calculating his fee was consistent with the terms of the Trust. Obviously, the simple calculation of two percent of the value of the Trust did not in itself require an itemized accounting of Mewis's time—there is no dispute about the value of the Trust. *Cf.*

21

*Davis v. Smith*, 49 Wis. 2d 237, 241-46, 181 N.W.2d 413 (1970) (failure to keep records of per diem charges, despite trust's direction that the trustee be paid on per diem basis, required remand to circuit court for trustee to justify compensation on per diem basis as a remedy for a breach of trust for failure to follow trust).

¶44    Turning to statutory duties, the beneficiaries also fail to identify a statute that required Mewis as trustee to maintain hourly billing records. The only other statutory duties to which the beneficiaries direct us are the duties to disclose information to beneficiaries under WIS. STAT. § 701.0813. Again, however, given the two-percent-fee methodology that Mewis relied on to propose a single fee as compensation, the beneficiaries do not explain how failing to keep hourly billing records was inadequate to comply with a § 701.0813 requirement. Under § 701.0813(2)(d), Mewis was required to notify the beneficiaries of any change in the method of calculating his compensation. However, there was no evidence of such a change; the only compensation he ever claimed was the single fee of $55,000. Under § 701.0813(3)(a)1., Mewis was required to report on the Trust's "property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation." However, there was no evidence that he compensated himself from Trust assets before claiming the single fee representing two percent of Trust asset values.

¶45    On the topic of the beneficiaries' best interests, they argue that Mewis needed to maintain hourly billing records to protect trust assets from being used to overcompensate Mewis. The beneficiaries are correct that the efforts that Mewis devoted to trust administration—as measured in part by the time that he reasonably devoted to administration—were among the factors that the circuit court was to consider in its discretionary role of evaluating the reasonableness of Mewis's compensation. *See Peabody's Estate v. Lawrence College*, 218 Wis.

541, 260 N.W. 444, 447; WIS. STAT. § 701.0708(2) (authorizing circuit court to "allow more or less compensation" to a trustee, depending on all pertinent circumstances). But the beneficiaries make an unsupported leap from this proposition to the argument that hourly billing records by Mewis were "essential" to the circuit court's compensation assessment.

¶46 The beneficiaries may also mean to make the related argument that hourly billing records were "essential" for the beneficiaries to determine whether to object to Mewis's claimed compensation and to attempt to invoke the circuit court's authority to review and possibly reduce it. As we now explain, we are not persuaded that hourly billing records were "essential" to provide the court or the beneficiaries with an adequate basis to evaluate the reasonableness of Mewis's claimed two-percent fee.

¶47 It is true that such records would have provided relevant information in evaluating the reasonableness of Mewis's claimed fee. And, a trustee who fails to keep detailed records accounting for the trustee's "time and labor" runs the risk, depending on all relevant circumstances, that a circuit court will not credit the trustee's after-the-fact estimate of time spent administering a trust. But the facts of this case illustrate that an itemized accounting of time is not necessary for a court to make sufficient relevant findings and to properly exercise its discretion in assessing a trustee's time and labor, in addition to other relevant factors, to resolve a contested issue regarding proposed trustee compensation. Thus, the court here was able to exercise its role in ensuring that Mewis's compensation was reasonable and, in that way, to protect the interests of the beneficiaries.

¶48 Although the contention is not well-explained, implied in the beneficiaries' argument about protecting their interests is the following

proposition. The duty to keep adequate records under WIS. STAT. § 701.0810(1) is closely connected to the duty to keep beneficiaries "reasonably informed about the administration of the trust" under WIS. STAT. § 701.0813(1). As far as it goes, this proposition finds support in pertinent secondary authority. It rests on a logical connection between keeping beneficiaries "reasonably informed about the administration" and some forms of recordkeeping. *See* UNIF. TR. CODE § 810 cmt. (UNIF. L. COMM'N 2004) ("[t]he duty to keep adequate records … is implicit in the duty to act with prudence" and "the duty to report to beneficiaries").[10] But here, the beneficiaries fail to direct us to evidence supporting their position that the specific hourly billing records of Mewis that they requested were necessary to keep the beneficiaries, in the language of § 701.0813(1), "reasonably informed." Attorney Jackson accurately informed the beneficiaries that the basis of Mewis's fee constituted, following pertinent customs, two percent of the total value of the Trust, and there is no supported allegation that Mewis or Jackson engaged in misrepresentation. Although Jenny in particular testified to dissatisfaction with Mewis's work, she also made clear that the beneficiaries had a reasonable understanding of the nature of the assets in the Trust and of the work that Mewis needed to perform to distribute the assets. Moreover, the beneficiaries make no effort on appeal to account for the fact that Jackson's disclosures included Jackson's billing statements. Indeed, the beneficiaries do not even refer to this aspect of Jackson's response to their request, much less do they address its potential significance in providing them with insight into the nature and scope of Mewis's work for the Trust.

---

[10] We may rely on comments to the Uniform Trust Code. WISCONSIN STAT. § 701.1203 states that WIS. STAT. ch. 701 "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it."

¶49 It is significant that the beneficiaries' specific breach-of-trust argument on appeal is that Mewis failed to document and disclose his work in the particular format of hourly billing records. None of the trust code provisions relied on by the beneficiaries define trustee duties in terms of specific formats of records that must be collected, created, or maintained. Instead, WIS. STAT. § 701.0810(1) requires only that a trustee keep "adequate records," and WIS. STAT. § 701.0813(1) requires that a trustee keep beneficiaries reasonably informed and "report" certain information. *See* UNIF. TR. CODE § 813 cmt. ("The Uniform Trust Code employs the term 'report' instead of 'accounting' [for § 813(c)] in order to negate any inference that the report must be prepared in any particular format or with a high degree of formality."); ALAN NEWMAN ET AL., BOGERT'S THE LAW OF TRUSTS AND TRUSTEES § 961 (July 2024 Update) ("No particular system or form of accounts must be followed by the trustee for its records."). Moreover, the Trust here had nothing to say about the format of records that Mewis had to keep. For example, it did not require that Mewis be compensated on an hourly basis. And, putting the terms of the Trust to the side, the beneficiaries have not shown that they needed hourly billing records created by Mewis in order to be reasonably informed about the appropriateness of Mewis's proposed fee.

*Duty to Keep Beneficiaries Reasonably Informed*

¶50 The beneficiaries argue that Mewis was in breach of trust under WIS. STAT. § 701.0813 by failing to promptly provide the beneficiaries with hourly billing records of Mewis's work in response to their request. This argument appears to rest entirely on § 701.0813(1), which requires trustees to keep beneficiaries "reasonably informed about the administration of the trust," and does not rest on the more specific disclosure duties in § 701.0813(2)-(3).

¶51      In the interest of judicial efficiency, we assume that the beneficiaries are correct that we review de novo the issues of what constitutes keeping beneficiaries "reasonably informed about the administration of the trust" and of what information requests made by beneficiaries are "unreasonable under the circumstances" under WIS. STAT. § 701.0813(1).[11]  We do, however, continue to accept the circuit court's findings of historical fact, none of which have been shown to be clearly erroneous.

¶52      Given our discussion above rejecting the beneficiaries' argument that Mewis was obligated to compile the hourly billing records that they sought as part of his duty to keep records, it would be illogical to say that Mewis was required to inform the beneficiaries of facts that he was not required to compile into a record in the first place.  For the reasons stated above, we conclude that hourly billing records—whether they had been compiled contemporaneously with Mewis's work on the Trust or instead constructed retroactively following the beneficiaries' request—were not necessary to keep the beneficiaries reasonably informed about the administration of the Trust under the circumstances here.

---

[11] This assumption is not a small one.  We review deferentially other assessments by circuit courts of what is reasonable under the circumstances in the context of Wisconsin trust law. *See Teasdale v. Teasdale*, 261 Wis. 248, 255, 264, 52 N.W.2d 366 ("the matter of trustee's compensation … is for … the trial court's sound discretion influenced by the particular circumstances of each case"); *Sensenbrenner*, 76 Wis. 2d at 634 (whether trustee's delay in distributing assets under the trust is unreasonable is a "finding" of the circuit court based on other "findings of fact" that this court will not disturb unless clearly erroneous).

¶53    In sum on this issue, we reject the beneficiaries' arguments that Mewis breached his duties as trustee in any of the three ways alleged.[12]

### III.    Jackson's Attorney Fees

¶54    The beneficiaries argue that it would be "unconscionable and absurd" to require the Trust to pay Jackson's attorney fees for his work representing the Trust after the beneficiaries lodged their objection to Mewis's claimed fee.  They emphasize the following testimony that Jackson gave at the evidentiary hearings on their petition:  Jackson "made no request for fees" at the time the beneficiaries lodged the objection, taking the position that requesting fees would represent "a conflict of interest."  The beneficiaries argue that the circuit court's order—which, to repeat, appeared to award Mewis all of Jackson's fees—erred to the extent that this included Jackson's attorney fees generated by his work that occurred following their objection.[13]  We conclude that the beneficiaries fail to identify a basis to reverse the court's order regarding Jackson's attorney fees.

---

[12] Given these conclusions, we need not reach the beneficiaries' arguments regarding appropriate remedies for any breach, including the denial or reduction of Mewis's claimed fee or barring Mewis from receiving the specific real estate identified in the agreement.  *See* WIS. STAT. § 701.1001(2)(h)-(j) (permitting circuit court to impose remedies for breach of trust including reducing or denying compensation to trustee; ordering recovery of wrongfully disposed of trust property; or ordering "any other appropriate relief … available at common law, or under equity principles"); WIS. STAT. § 701.1002(1) (trustee who commits breach of trust "is liable to an affected beneficiary for the greater of" "[t]he amount required to restore the value" of trust property lost due to the breach and any profit the trustee made resulting from the breach).

[13] The beneficiaries also appear to argue more broadly that the circuit court erred in permitting Mewis to use Trust assets to cover the cost of his own personal legal fees in connection with this action, because Mewis breached the Trust.  But we discern no developed argument that any such contention does not necessarily fail in light of our conclusion that the beneficiaries do not establish that there was a breach of trust.

¶55    It is fatal to this argument that the beneficiaries' brief in chief on appeal does not identify record support for the proposition that the circuit court ordered the payment of Trust assets to cover the fees for any or all of the work the Jackson performed as attorney for the Trust after the beneficiaries objected to Mewis's claimed fee.  It is only for the first time in their reply brief that they purport to identify or quote specific terms of the court order awarding Jackson's attorney fees that they challenge.  *See* ***CreditBox.com, LLC v. Weathers***, 2023 WI App 37, ¶36, 408 Wis. 2d 715, 993 N.W.2d 802 (court of appeals need not address arguments raised for the first time in reply brief).  And, even then, they do so without the required citation to the record, and further without attempting to meaningfully interpret the order in light of the facts in the record.  *See* ***Tam v. Luk***, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (Ct. App. 1990) (court of appeals may reject argument for lack of support with citation to facts in the record).  Similarly, for the first time on reply, they note times, after the beneficiaries filed their petition and before Mewis retained a new attorney to represent him in this action, when Jackson appeared as Mewis's attorney of record and submitted filings on his behalf.  These arguments come too late.

¶56    A related point is that the beneficiaries' request for relief from this court is incoherent.  Their only request for relief is a determination that fees allegedly awarded to Jackson were inappropriate as a matter of law.  They do not seek a remand to the circuit court for factfinding; instead, we are asked to resolve any ambiguities in the record.  Further, the beneficiaries fail to state the amount that they submit would be the appropriate amount of compensation for Jackson's attorney fees.

¶57    The beneficiaries completely ignore our standard of review.  They merely assert that the issue of alleged overpayment of fees to Jackson represents

the application of statutory standards to undisputed facts. However, they fail to come to grips with the fact that this issue depends on numerous factual determinations and an assessment of the equity of the circumstances, which are determinations and assessments for the circuit court to make, not this court. *See Nationstar Mortg. LLC v. Stafsholt*, 2018 WI 21, ¶23, 380 Wis. 2d 284, 908 N.W.2d 784 (decision "to grant equitable remedies is reviewed for an erroneous exercise of discretion"); WIS. STAT. §§ 701.0106 ("principles of equity supplement" the trust code), 701.1004(1). The beneficiaries do not attempt to show that the court failed to rely on appropriate and applicable law, or that the court failed to base its decision on relevant facts in the record. *See Trust of Rene von Schleinitz v. Maclay*, 2016 WI App 4, ¶36, 366 Wis. 2d 637, 874 N.W.2d 573.

## CONCLUSION

¶58    For all these reasons, we affirm the circuit court order denying the beneficiaries' petition to deny or reduce the fee claimed by Mewis or Jackson's attorney fees.

*By the Court*.—Order affirmed.

Not recommended for publication in the official reports.